IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EARL MICHAEL WELNIAK, | ) | CASE NO. 1:12-CV-838 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT & RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to local rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Earl Michael Welniak's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be AFFIRMED.

I. INTRODUCTION & PROCEDURAL HISTORY

On June 10, 2008, Plaintiff Earl Michael Welniak ("Plaintiff" or Welniak") applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits alleging he became disabled on December 31, 2001, due to suffering from bi-polar disorder, depression and alcoholism. (Tr. 155-57, 158-64, 210).  The Social Security Administration denied Welniak's applications initially and upon reconsideration.  (Tr. 126-36,

142-47). Thereafter, Plaintiff requested a hearing before an administrative law judge to contest the denial of his applications. (Tr. 148-49). The administration granted Plaintiff's request and scheduled a hearing. (*See* Tr. 153-54).

On September 3, 2010, Administrative Law Judge Andrew Emerson (the "ALJ") convened a hearing to evaluate Welniak's applications. (Tr. 74-118). Plaintiff, represented by counsel, testified before the ALJ during the proceeding. (*Id.*). A vocational expert, Nancy Borgenson (the "VE"), also appeared and testified. (*Id.*). On September 23, 2010, the ALJ issued an unfavorable decision finding Welniak was not disabled. (Tr. 36-48). After applying the five-step sequential analysis,[1] the ALJ determined Welniak retained the ability to perform work which existed in significant numbers in the national economy. (*Id.*).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review. (Tr. 30). However, the council denied Welniak's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 9-12). Plaintiff now seeks judicial review of the ALJ's decision. Review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. PERSONAL INFORMATION

Welniak, born on August 13, 1960, was 41 years old as of his alleged disability onset date and 50 years old on the date of his hearing before the ALJ. (Tr. 79-80). Accordingly, prior to his 50th birthday, he was classified as a "younger person" for Social Security purposes. (Tr. 42); *see* 20 C.F.R. §§ 416.963(c), 404.1563(c). Plaintiff completed high school and received additional training regarding hazardous material at fire school in 1998. (Tr. 80-81). Welniak's past work experience includes working in "shipping and receiving, loading and unloading material, [and] handling." (Tr. 112).

## III. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his application of the five-step sequential evaluation process. At step one, the ALJ found Welniak had not engaged in substantial gainful activity since his alleged onset date of December 31, 2001. (Tr. 38-39). At step two, the ALJ held Plaintiff suffered from the following severe impairments: "alcohol dependence; bipolar disorder; status-post right femur fracture with internal fixation and intramedullary rodding; status-post cecal volvulus with perforation; right colectomy and temporary ileostomy; and takedown of ileostomy with ileocolonic anastomosis". (Tr. 39). But, at step three, the ALJ ruled that none of these impairments, individually or combined, met or

3

equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 39-40).

Before moving to the next step, the ALJ assessed Welniak's residual functional capacity ("RFC") to work. (Tr. 40-41). The ALJ concluded Welniak retained the physical ability to perform a limited range of "light work",[2] but due to the combined effects of Welniak's alcohol dependence and bipolar disorder, he did not retain the capacity to "sustain sufficient concentration, persistence, or pace to do even simple, routine tasks on a regular and continuing basis". (*Id.*). Based on this finding, at step four, the ALJ concluded Welniak could not return to any of his past work. (Tr. 41). Then, at step five, the ALJ ruled Welniak was disabled pursuant to Medical-Vocational Rule 202.21, because his impairments, including his substance abuse disorder, so limited the range of work available to Welniak, that he was deemed disabled. (Tr. 42).

However, the ALJ held that Welniak's substance abuse disorder was a contributing factor material to his disability determination. (Tr. 37). Therefore, the ALJ considered whether Plaintiff would still be disabled if he stopped abusing alcohol. (Tr. 42-48). The ALJ did so by re-assessing his findings at each step of the five-step analysis, considering whether Plaintiff's sobriety would affect his prior rulings. The ALJ's ruling at step one remained unchanged. At step two, the ALJ found that even absent substance abuse, Plaintiff continued to suffer from the remaining severe impairments previously identified. (*Id.*). At step three, the ALJ again declined to rule that any of these impairments met or equaled listing level. (Tr. 42-43). Next, the ALJ

---

[2] The regulations define "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds". 20 C.F.R. §§ 404.1567(b), 416.967(b). It also usually requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

4

considered what effect Welniak's sobriety would have on the prior RFC assessment. The ALJ concluded that Welniak's RFC remained the same, except, Welniak would no longer be unable to sustain sufficient concentration, persistence, or pace. (Tr. 43). Therefore, the ALJ removed this limitation from his RFC finding. (*Id*.). But, at step four, the ALJ found that this modified RFC still would not have permitted Plaintiff to return to any of his past relevant work. (Tr. 47). Nevertheless, the ALJ found that this RFC permitted Plaintiff to perform other work which existed in significant numbers in the national economy. (Tr. 47-48). Thus, the ALJ ultimately found that Plaintiff was not disabled, because absent his substance abuse, Welniak would be able to work successfully. (*Id*.).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" has been defined as more than a scintilla of evidence but less than a

preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff only challenges the ALJ's decision on one over-arching ground. Welniak contends the ALJ erroneously concluded that his alcohol abuse was the ultimate cause of his disability.

Pursuant to the Contract With America Advancement Act of 1996, disability benefits cannot be awarded to an individual where drug addiction or alcoholism is a material contributing factor to the finding of disability. *Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004) (*citing* Pub.L. No. 104-121 § 105(a)(1)). The governing regulations lay out the process used to evaluate a claimant's drug addiction or alcoholism. 20 C.F.R. §§ 416.935(b), 404.935(b). The regulations state, in part:

>(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
>(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

20 C.F.R. §§ 416.935(b)(1)-(2), 404.935(b)(1)-(2). If the claimant's remaining limitations do not render the claimant disabled, then the claimant's drug or alcohol problem will be deemed a material contributing factor to his/her disability.  20 C.F.R. §§ 416.935(b)(2)(i), 404.935(b)(2)(i).

The relevant period of review spans nearly ten years.  The record is replete with evidence illustrating Welniak's problems with alcoholism throughout this time period.  Through the years Plaintiff has been convicted of numerous alcohol-related offenses.  He has also received treatment for alcoholism at various facilities.  When considering the effect of Welniak's substance abuse disorder, the ALJ found that Welniak only retained the physical capacity to perform a limited range of light work, regardless of whether he stopped abusing alcohol or not.  However, from a mental standpoint, the ALJ concluded that Welniak's alcohol dependence and bipolar disorder prevented him from possessing the mental capacity to work on a regular and continuing basis.  This single finding was the only alteration between the ALJ's two RFC assessments.

Plaintiff acknowledged his checkered history with alcohol abuse during the hearing and within his brief.  He also conceded that it was proper for the ALJ to consider whether his alcohol abuse was a material contributing factor to the initial disability finding.  Plaintiff's appeal, therefore, rests on the question of whether substantial evidence supports the ALJ's decision that he would be able to work if he stopped abusing alcohol.

At the onset, the undersigned notes that the Commissioner identified several pieces of evidence supporting the ALJ's decision. However, little, if any, of this evidence was relied upon by the ALJ. Though judicial review must be based upon consideration of the entire record, *Walker, supra,* 884 F.2d at 246, the undersigned agrees with Plaintiff that the ALJ's decision can only stand on the reasoning provided by the ALJ. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (". . . a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.").

Upon review of the record, the undersigned finds the ALJ provided a reasonable explanation of his ruling which is supported by the evidence. To begin, the ALJ assigned great weight to the opinion of state agency psychologist, Dr. Steven Meyer. Dr. Meyer evaluated Welniak's mental capacity in March 2008. (Tr. 490-92). Dr. Meyer noted that Plaintiff's alcoholism was in early remission at the time of his review and that Plaintiff was currently receiving out-patient treatment and taking medication to maintain sobriety. (Tr. 492). In light of this, Dr. Meyer opined Welniak had moderate limitations in 7 out of 20 areas of mental functioning. (Tr. 490-92). Dr. Meyer found Plaintiff was either "not significantly limited" or that there was no evidence to support a limitation in the remaining 13 areas examined. (*Id.*). Despite noting Welniak's history of alcohol abuse, treatment and risks of relapse, Dr. Meyer concluded Welniak was "[c]apable of simple and moderately complex routine work, at [a] reasonable pace, in [a] setting with regular expectations, occasional intermittent interactions with others and few changes." (Tr. 492).

The ALJ also credited the opinion of state agency psychologist, Dr. Frank Orosz, who evaluated Plaintiff's mental health in a Mental Residual Capacity Assessment in September 2008.  Dr. Orosz's evaluation of Welniak largely mirrored Dr. Meyer's findings regarding Plaintiff's abilities in the 20 areas of mental functioning examined, opining that Welniak had no more than moderate limitations in 6 out of the 20 domains listed.  (Tr. 571-73).  The doctor noted that Plaintiff was currently still drinking and not adhering to treatment at the time of his review.  (Tr. 492).  Nonetheless, Dr. Orosz found Welniak could perform simple and moderately complex work.  (*Id*.).

In addition, the ALJ highlighted Plaintiff's treatment with Dr. Shelia Rubin.  Welniak first presented to Dr. Rubin on December 16, 2009, for evaluation of memory problems.  (Tr. 998).  Welniak told Dr. Rubin that he experienced memory problems even during periods of sobriety.  (*Id*.).  But, he also admitted that these problems had not worsened since he stopped drinking.  (*Id.*).  Dr. Rubin noted Plaintiff's history of problems with alcoholism and attempts at recovery.  (Tr. 998-1000).  At the time of this appointment, Welniak reported that he had not had a drink in two weeks.  (Tr. 998).  Dr. Rubin found that Plaintiff was alert and fully oriented during the examination.  (Tr. 1000).  She also opined that other than a mild tremor and decreased distal vibration, his neurological function appeared normal.  (*Id*.).  However, she was unable to discern whether Welniak had a memory impairment.  (*Id*.).  Therefore, she referred him for neuropsychological testing.  (*Id*.).

The ALJ also acknowledged the opinion of Dr. Cynthia Kubu, the neuropsychologist who examined Plaintiff at Dr. Rubin's request.  Dr. Kubu saw Plaintiff on January 26, 2010, and found him to exhibit average intellectual skills.  (Tr. 598-99, 971-72).  At the time of the examination, Plaintiff reported drinking a pint of vodka roughly three nights a week.  (Tr. 599,

9

972). Dr. Kubu asserted that the inefficiencies Welniak exhibited during testing and those reported in his daily life were reflective of his psychological distress, poor sleep patterns and intermittent intoxication. (*Id.*). The doctor recommended that Welniak adopt better sleeping hygiene and become sober. (*Id.*).

Finally, the ALJ noted that when Plaintiff presented back to Dr. Rubin in April 2010,[3] the doctor indicated that Plaintiff's cognitive function was within normal limits despite the fact that Plaintiff reported drinking alcohol every other day. (Tr. 993). The doctor discussed the results of Dr. Kubu's neuropsychological testing with Plaintiff, explaining they showed he was functioning largely in the average range. (*Id.*). Dr. Rubin also indicated that a CT scan of Welniak's brain showed normal results. (*Id.*).

This evidence supports the ALJ's ruling that Plaintiff would be able to work if he stopped abusing alcohol. It is reasonable for an ALJ to look at a claimant's abilities during periods of sobriety and compare them with the claimant's abilities when abusing alcohol in order to assess how the abuse affects the claimant's functioning. *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 443 (6th Cir. 2011). Dr. Meyer's opinion is particularly relevant. He opined that Welniak was capable of working while in early alcohol remission and receiving treatment and medication. Furthermore, Plaintiff admitted that his memory problems had not worsened since he stopped drinking.

On the other hand, although Dr. Orosz noted Plaintiff was still drinking at the time of his review, he nonetheless found that Welniak was capable of working. Notably, neither Dr. Orosz nor Dr. Meyer found Plaintiff to suffer greater than moderate limitations in a limited number of mental capacities relevant to maintaining employment. The undersigned notes that state agency

---

[3] The ALJ incorrectly identified this appointment as occurring in February 2010. (*See* Tr. 45).

physicians are deemed experts in the evaluation of Social Security disability claims. *See* 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i). Thus, it was appropriate for the ALJ to rely upon their opinions.

Furthermore, the opinions of Drs. Rubin and Kubu also bolster the ALJ's ruling. During Plaintiff's initial meeting with Dr. Rubin, he reported that he had not consumed alcohol in two weeks. Aside from Plaintiff's complaints of memory problems, Dr. Rubin found Plaintiff's neurological functioning was normal during this period of sobriety. Although Plaintiff admitted to consuming alcohol to Dr. Kubu, albeit in a reduced quantity, the doctor still found that Welniak's cognitive and neuropsychological functioning fell within normal limits. The doctors encouraged sobriety and for Plaintiff to enter a detoxification program.

While some of the evidence cited by the ALJ can also admittedly be construed as demonstrating that Plaintiff could work even during periods when he abused alcohol, this view does not necessarily undermine the ALJ's ultimate ruling. At most, it suggests that it may have been improper for the ALJ to initially find that the whole of Plaintiff's impairments, including alcohol abuse, rendered him disabled. *See LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 842 (6th Cir. 1986) ("An alcoholic who retains the ability to drive, socialize, maintain a lawn, manage his money, etc., is not disabled."). But, this evidence certainly does not benefit Plaintiff's cause. Regardless of how the evidence is construed, it is demonstrative of Plaintiff's ability to perform some degree of work.

The other evidence cited by Plaintiff supporting the opposite conclusion does not require remand. By Plaintiff's own admission, this evidence constitutes the "other substantial evidence of record that shows there is no demonstrable causal connection between Welniak's alcohol use and his level of impairment." (Pl.'s Reply at 1). But, the fact that there is evidence supporting a

conclusion contrary to the ALJ's position, does not mean that the ALJ's decision is erroneous. It is well-established that the adjudicator's decision must stand where supported by substantial evidence, even though substantial evidence also supports the opposite conclusion. *Mullen, supra*, 800 F.2d at 545. This is because "[t]he substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (*citing id.*). Thus, Plaintiff's identification of evidence supporting a different ruling is inapposite. Plaintiff needed to show that the ALJ's review of the evidence was in error, or, that there was not substantial evidence to support the ALJ's position. He has failed to do so.

Lastly, Welniak argues that it was error for the ALJ to construe his daily activities as illustrating he could stay on task to perform work activity. The ALJ noted that Welniak was able to "ride a bicycle for up to 14 miles, play basketball, umpire baseball games, help his friend move, prepare meals, attend AA meetings regularly, shop, use a computer, apply for jobs, use public transportation, go to the library, and do volunteer work." (Tr. 45). However, Plaintiff contends that he was only able to perform many of these tasks because he enjoyed them and they could be performed at his own will under his control, unlike work activities which are much more demanding and stressful. Though these statements may be true, it was not unreasonable for the ALJ to consider the extent of Welniak's activities in his evaluation of Welniak's disabled status.

The governing regulations and rulings admonish adjudicators to consider the claimant's daily activities when assessing the credibility of the individual's statements. SSR 96-7p, 1996 WL 374186, at *3 (1996); 20 C.F.R §§ 404.1529(c)(3), 416.929(c)(3). Plaintiff's ability to use public transportation, maintain a checking account, umpire baseball games and attend AA

12

meetings is reflective of his intellectual abilities and is probative. Accordingly, it was reasonable for the ALJ to consider this evidence. Furthermore, contrary to Plaintiff's suggestion, the ALJ's decision was not solely based upon Plaintiff's ability to perform these tasks. Rather, the ALJ's decision was also based upon his review of the medical opinion evidence. The ALJ's consideration of Plaintiff's activities and subsequent decision to find Plaintiff's statements less than fully credible are supported by the record. As a result, the undersigned declines to disturb the ALJ's ruling. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (an ALJ's credibility finding is entitled to great weight and deference).

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: June 12, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).